**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| INTERNATIONAL HOUSE, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br> v. <br><br> CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., <br><br> Defendant. | **Civil Action No.: 22-cv-8705** <br><br> **COMPLAINT FOR DAMAGES** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff International House, on behalf of itself and all others similarly situated, files this class action complaint against Defendant Consolidated Edison Company of New York, Inc. On personal knowledge of its own circumstances and upon investigation and information and belief of her counsel, Plaintiff alleges the following:

## INTRODUCTION

1.      Through this action, Plaintiff seeks to recoup monies owed to it by Defendant Consolidated Edison of New York, Inc. (hereafter, "Defendant" or "Con Ed") under plain and unambiguous statutory text and associated regulation. Specifically, and as set forth in detail herein, Con Ed has overcharged Plaintiff and each putative class member for utility services, but refuses to provide interest on those customer overpayments as required by law. Con Ed's policy and practice of refusing to provide interest on customer overpayments has classwide impacts, depriving Plaintiff and putative class members of money that is rightfully theirs. Class treatment is particularly well-suited to address this widespread injustice.

2.      Con Ed is one of the largest regulated utility companies in the United States, providing electric, gas, and steam service to more than three million customers in New York City and Westchester County.

1

3.      Con Ed is enormously profitable, earning $1.3 billion in profit in 2021 alone.

4.      Con Ed charges its New York customers among the highest rates for electricity, gas, and steam in the country. In 2022, Con Ed raised electricity rates 16 percent from the previous year. Con Ed has estimated that gas rates will rise 18 percent in 2022.

5.      Con Ed's electricity and gas tariffs permit it to render an estimated bill for a regular billing cycle under certain specific circumstances. When Con Ed renders an estimated bill, a customer is charged the estimated amount for that particular billing cycle.

6.      This practice frequently results in inflated billing, or overbilling, of the customer. In such an instance, the customer is overcharged through no fault of their own and often without their knowledge.

7.      Upon information and belief, at least 50 percent of Con Ed's customers—over 2.25 million ratepayers—have been overbilled at least once during the past six years.

8.      Public Service Law § 118(3) requires Con Ed to refund or credit a customer when it realizes the customer has overpaid for a particular billing cycle.

9.      Applicable regulations also require Con Ed to provide interest on an overpayment that is the result of Con Ed's erroneous billing. *See* 16 NYCRR 145.

10.      Accordingly, the Public Service Law and regulations promulgated thereto are clear and unambiguous: when Con Ed issues a customer's bill that results in a customer overpayment, Con Ed is responsible for refunding or crediting the customer and paying interest on the overpayment.

11.      As set forth herein, except in narrow circumstances, Con Ed does not provide interest on overpayments.

12.      Indeed, contrary to clear statutory and regulatory mandates, Con Ed refuses to

provide interest on customer overpayments in most circumstances.

13.     Even where it takes months, or longer, for a customer to obtain a refund of Con Ed's overpayment, Con Ed refuses to provide the interest owed.

14.     Con Ed's policy and practice thus affects nearly every ratepayer that is overcharged due to an erroneously estimated bill.

15.     Plaintiff and the putative class therefore bring this class action proceeding seeking to remedy the classwide harms inflicted by Con Ed's policies and practices, which are contrary to clear and unambiguous New York law. This Court is in the best position to interpret and apply that law, which impacts millions of New York residential, non-profit, and commercial Con Ed customers.

**PARTIES**

16.     Plaintiff International House is a domestic not-for-profit corporation with its principal place of business located at 500 Riverside Drive, New York, New York 10027.

17.     Plaintiff International House, established in 1924, is an independent residence and program center for postgraduate students, research scholars, trainees, and interns. Plaintiff's mission is to enable its international residents to live and learn together in a supportive New York City community.

18.     In over 95 years of operation, more than 65,000 individuals have resided in the International House, including Nobel and Pulitzer Prize winners, future heads of state, CEOs of global corporations, and teachers, small business owners, and community leaders from around the world.

19.     Defendant Consolidated Edison Company of New York, Inc. ("Con Ed") is a New York corporation with its principal place of business located at 4 Irving Place, New York, New

3

York 10003.

20.     Con Ed is a utility company that provides electric and gas service to customers in New York City and Westchester County, and steam service in the borough of Manhattan.

21.     Con Ed services approximately 3.4 million electric customers, 1.1 million gas customers, and 1700 steam service customers in its operating area.

22.     Con Ed is a subsidiary of the parent utility known as Consolidated Edison, Inc., one of the largest investor-owned energy-delivery companies in the United States.

23.     Consolidated Edison, Inc. provides energy-related products and services, including electricity, gas, and steam, through its subsidiaries such as Con Ed, Orange and Rockland Utilities, Inc., Con Edison Clean Energy Businesses, Inc., and Con Edison Transmission, Inc.

24.     Consolidated Edison, Inc. earns approximately $12 billion in annual revenues and has approximately $63 billion in assets.

## JURISDICTION AND VENUE

25.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d), as the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which at least one member of the class is a citizen of a State different from Defendant. The number of members of the proposed class in aggregate exceeds 100. 28 U.S.C. § 1332(d)(5)(B).

26.     The putative class consists of one or more unnamed members who are entities incorporated in a State other than New York and/or whose principal place of business is in a State other than New York.

27.     Con Ed has consented to jurisdiction in this District pursuant to its General Terms

of Service.[1]

28.     This Court has personal jurisdiction over Defendant because it resides in, regularly conducts business in, engages in other persistent courses of conduct in, and/or derives substantial revenue from products and/or services provided to persons in this District and in New York.

29.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District, where Defendant maintains its principal place of business.

## FACTUAL BACKGROUND

### A.     Con Ed Regularly Overcharges Customers For Utility Services They Have Not Used.

30.     All electric, gas, water, and telecommunication utilities service providers in New York State are regulated and overseen by the New York Public Service Commission (hereafter, "Public Service Commission").

31.     The Public Service Commission, in turn, authorizes Con Ed to provide electric, gas, and steam service to customers in New York City and Westchester County.

32.     Con Ed provides utility services to customers pursuant to the terms and conditions of tariffs filed with the Public Service Commission.

33.     Once Con Ed's tariff for a particular utility service is accepted by the Public Service Commission, it "takes on the force and effect of law." *Lee v. Consol. Edison Co. of N.Y.*, 98 Misc. 2d 304, 305-06, 413 N.Y.S.2d 826, 828 (N.Y. 1st Dep't App. Div. 1978).

34.     The tariff is "part of the contract between the customer" and Con Ed. *Krasner v. N.Y. State Elec. & Gas Corp.*, 90 A.D.2d 921, 921-22 (N.Y. App. Div. 3d Dep't 1982). *See also*

---

[1] *See* www.coned.com/en/terms-and-conditions (last visited Aug. 28, 2022).

*Nat'l Communications Assoc., Inc. v. AT&T*, No. 92 Civ. 1735 (LAP), 1998 WL 118174, at *10 (S.D.N.Y. Mar. 16, 1998).

35.     Under Con Ed's Electric Tariff, customers are generally billed for electric services on a monthly basis based on electricity usage as measured by their electric meter. *See* Con Ed Electric Tariff § 10.[2]

36.     The Electric Tariff permits Con Ed to render an estimated bill for a regular billing cycle in specific, enumerated circumstances. For example, if Con Ed cannot access a meter during a given month, it may render an estimated bill. *See* Con Ed Electric Tariff § 10.7.

37.     Estimated billing, which is generally based on past usage, routinely results in customer overcharges.

38.     Con Ed's Gas Tariff also permits it to render an estimated bill under circumstances substantially similar to those set forth in its Electric Tariff. *See* Gas Tariff § 8(G).[3]

39.     Con Ed's Steam Tariff similarly permits it to render an estimated bill under circumstances similar to those set forth in its Electric and Gas Tariffs. *See* Steam Tariff § 3.4.7.[4]

40.     For electric, gas, and steam customers receiving an estimated bill, overcharges are common.

41.     Con Ed occasionally audits its customers' billings and if it learns that it overbilled a customer, Con Ed will revise the bill downward and provide a credit or refund. Con Ed also refunds or credits a customer if it learns it incorrectly billed a customer.

---

[2]   https://lite.coned.com/_external/cerates/documents/elecPSC10/electric-tariff.pdf   (last visited Aug. 28, 2022).

[3]     https://lite.coned.com/_external/cerates/documents/gas_tariff/pdf/schedule-for-gas-service.pdf (last visited Aug. 28, 2022).

[4]   https://lite.coned.com/_external/cerates/documents/steam/steam-tariff.pdf   (last   visited Aug. 28, 2022).

42.     Upon information and belief, Con Ed's internal auditing process identifies only a fraction of the customers it overbills on an annual basis.

43.     As set forth in detail below, even where Con Ed realizes it has overbilled a customer, it almost never provides the customer with interest on the overpayment despite a clear legislative and regulatory directive that it do so.

**B.      The Public Service Law and Regulations Promulgated Thereto Unambiguously Require Con Ed to Refund Customer Overpayments Within Thirty Days or to Pay Interest on the Overpayment.**

44.     New York Public Service Law § 118 governs payments by a ratepayer to a public utility such as Con Ed.

45.     In particular, Public Service Law § 118(3)(a) states, "The commission shall have the power to require a public utility company or municipality to provide a refund or credit to a customer when a payment has been made in excess of the correct charge for actual service rendered to the customer."

46.     This statute thus grants the Public Service Commission the right to require a utility to provide a refund or credit where a customer is overbilled regardless of the reason for such overbilling.

47.     Indeed, the legislature amended the Public Service Law to add subsection (3) because it believed a utility had a "***duty***" to credit or refund customer overpayments. *See* Public Service Law § 118(3), Bill Jacket, L. 1981, c. 749 (emphasis added).

48.     Pursuant to the Public Service Law, the Public Service Commission has promulgated regulations governing the conduct of regulated utilities such as Con Ed. Those regulations are set forth in Title 16 of the New York Codes, Rules and Regulations (NYCRR), Section 145.

49.     Section 145.1 of Title 16 states, "Every electric corporation or municipality shall provide interest on customer overpayments according to the standards and criteria set forth in this Part."

50.     Section 145.2 of Title 16 defines a "customer overpayment" as "payment by the customer to the utility in excess of the correct charge for electric service supplied to the customer which was caused by erroneous billing by the utility."

51.     Section 145.4 of Title 16 requires the payment of interest on overcharges not refunded or credited within 30 days of payment: "No electric corporation or municipality shall be required to pay interest on customer overpayments that are refunded within 30 days after such overpayment is received by the electric corporation or municipality."

52.     Accordingly, although Public Service Law § 118 requires a credit or refund whenever overpayment occurs, the Public Service Commission's regulation states that a utility must only pay interest on that overpayment when it was "caused by erroneous billing by the utility."

53.     The legislative and regulatory text is unambiguous that where a utility erroneously overbills a customer, *for any reason*, interest on the customer's overpayment is due. In other words, erroneous overbilling requires Con Ed to pay interest on the overpayment.

54.     Con Ed's Electric, Gas, and Steam Tariffs describe when it will pay interest on customer overpayments. While 16 NYCRR 145.2 requires Con Ed to pay interest on an overpayment whenever that overpayment was "caused by erroneous billing by the utility," Con Ed's tariff states that it will pay interest only where an overpayment was "caused by billing by the Company that is erroneous due to the Company's *own mistake*." *See* Electric Tariff § 12.2 (emphasis added); *see also* Gas Tariff § 8(L) (same language); Steam Tariff § 3.4.13 (same

8

language).

55.     Since a utility's tariff cannot contravene duly enacted legislation or regulation, any time Con Ed erroneously overbills a customer, such overbilling is attributable to Con Ed's own mistake.

56.     All billing submitted by Con Ed that turns out to be incorrect, for any reason, are by definition due to "the Company's own mistake." Electric Tariff § 12.2. It is Con Ed's decision to send the bill, which is inaccurate, and Con Ed chooses how it audits its own billings. Thus, Con Ed could, but chooses not to, implement an internal auditing system capable of identifying customer overpayments within thirty days of the billing. Con Ed unilaterally benefits from its failure to implement such a system, improperly holding and benefiting from its customers' overpayments.

57.     Contrary to the clear regulatory requirements and the plain meaning of its tariff conditions, Con Ed refuses to provide interest to customers, including Plaintiff, it has erroneously overbilled.

58.     Upon information and belief, Con Ed's policy is not to pay interest on overpayments except in very narrow circumstances not applicable to almost all customers.

59.     Upon information and belief, Con Ed maintains and/or is capable of generating an accounting of customers that overpaid for utility services due to Con Ed's erroneous billing and is fully capable of applying the required interest when applicable, yet it chooses to avoid this obligation.

**EXPERIENCES OF REPRESENTATIVE PLAINTIFF**

60.     Plaintiff obtains electricity services from Con Ed and Con Ed renders electric bills to Plaintiff on a monthly basis.

61.    During the period from March 11, 2020 to June 9, 2021 alone, Plaintiff was overbilled on fifteen electric bills, as follows:

|  | Date From | Date To | Original Bill Amount | Revised Bill Amount | Amount of Overcharge | Elapsed Days Before Revision |
|---|---|---|---|---|---|---|
| 1 | 5/10/2021 | 6/9/2021 | $12,226.83 | $8,149.83 | $4,077.00 | 149 |
| 2 | 4/12/2021 | 5/10/2021 | $9,263.49 | $5,955.52 | $3,307.97 | 179 |
| 3 | 3/12/2021 | 4/12/2021 | $8,873.37 | $6,203.44 | $2,669.93 | 207 |
| 4 | 2/10/2021 | 3/12/2021 | $8,711.93 | $3,289.82 | $5,422.11 | 249 |
| 5 | 1/11/2021 | 2/10/2021 | $8,479.82 | $4,838.68 | $3,641.14 | 157 |
| 6 | 12/9/2020 | 1/11/2021 | $8,795.91 | $5,462.53 | $3,333.38 | 187 |
| 7 | 11/5/2020 | 12/9/2020 | $8,630.71 | $5,146.66 | $3,484.05 | 220 |
| 8 | 10/7/2020 | 11/5/2020 | $9,490.07 | $2,580.68 | $6,909.39 | 254 |
| 9 | 9/8/2020 | 10/7/2020 | $16,144.23 | $5,613.82 | $10,530.41 | 387 |
| 10 | 8/7/2020 | 9/8/2020 | $21,829.52 | $13,158.53 | $8,670.99 | 398 |
| 11 | 7/9/2020 | 8/7/2020 | $18,341.28 | $10,822.74 | $7,518.54 | 343 |
| 12 | 6/9/2020 | 7/9/2020 | $17,942.48 | $11,075.50 | $6,866.98 | 372 |
| 13 | 5/8/2020 | 6/9/2020 | $9,396.95 | $7,040.85 | $2,356.10 | 403 |
| 14 | 4/9/2020 | 5/8/2020 | $6,578.32 | $4,698.61 | $1,879.71 | 434 |
| 15 | 3/11/2020 | 4/9/2020 | $7,134.20 | $5,138.30 | $1,995.90 | 463 |

62.    In total, over this fifteen-month period alone, Con Ed overcharged Plaintiff a total of $72,663.60. Upon information and belief, each of these overcharges was the result of Con Ed's own mistake.

63.     Con Ed subsequently revised these bills but none were revised within thirty days and Con Ed has not provided interest on a single overpayment.

## CLASS ACTION ALLEGATIONS

64.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of itself and the class defined herein.

65.     This action satisfies the requirements set forth in Rule 23(a) and Rule 23(b)(3).

66.     Plaintiff brings this action on behalf of the following class (referred to as the "Class"):

> All Con Ed customers who were overbilled during the Class Period,
> and were (i) not credited or refunded the difference within thirty (30)
> days and (ii) not provided interest on the overbilled amount.

67.     Excluded from the Class are Con Ed, its legal representatives, assigns and successors and any entity in which Con Ed has a controlling interest, as well as Consolidated Edison, Inc. and its subsidiaries.

68.     Also excluded is the judge to whom this case is assigned and any member of the judge's immediate family and judicial staff.

69.     The Class Period shall be defined as October 13, 2016 through the present.

70.     Con Ed customers shall include any customer that receives electric, gas, and/or steam utility services from Con Ed at a property in New York City or Westchester County.

71.     **Numerosity (Rule 23(a)(1))**: Although the actual number of class members is presently unknown, Con Ed estimates it has approximately 3.4 million electric customers, 1.1 million gas service customers, and 1700 steam service customers across New York City and Westchester County. Upon information and belief, a significant percentage of these customers were overcharged one or more times during the Class Period but were not provided interest on the

overbilled amount. The Class is thus likely comprised of thousands or tens of thousands of Con Ed customers thereby making joinder wholly impracticable. The disposition of the claims of the class members in a single action will provide substantial benefits to the parties and the Court.

72.     **Commonality (Rule 23(a)(2))**: The claims of Plaintiff and the Class raise common factual and legal questions that can be answered in a classwide proceeding for all Class members. Questions of law and fact common to Plaintiff and the Class include, but are not limited to the following:

a.   Whether Con Ed engaged in "erroneous billing by the utility" under 16 NYCRR 145.2 when it failed to adhere to applicable regulatory procedures;

b.   Whether Con Ed engaged in "billing by the Company that is erroneous due to the Company's own mistake" under Con Ed's tariff when it failed to bill class members accurately and instead overbilled them for utility service;

c.   Whether Con Ed was obligated to provide customers that it overbilled with interest on the overbilled amount as set forth in 16 NYCRR 145.4;

73.     **Typicality (Rule 23(a)(3))**: The claims of the representative Plaintiff are typical of the claims of members of the Class in that the representative Plaintiff, like all members of the Class, was overbilled by Con Ed and was neither credited nor refunded within thirty days and was not provided interest on the overbilled amount. Thus, the representative Plaintiff, like all members of the Class, has suffered a common harm. The factual basis of Con Ed's misconduct is common to all members of the Class.

74.     **Adequacy (Rule 23(a)(4))**: Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel with substantial experience in prosecuting consumer class actions, as well as counsel with significant experience adjudicating

utility overcharges on behalf of customers in New York State. Plaintiff and its counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so. Neither Plaintiff nor its counsel have any interests adverse to those of the Class.

75. **Predominance of Common Questions (Rule 23(b)(3))**: Common questions of law and fact predominate over any questions involving individualized analysis. There are no fundamental questions of fact or law that are not common to members of the Class. Con Ed's obligation to provide credit or a refund within thirty days to those customers it overbilled, and to provide interest on the overbilled amount, is a common issue that will be addressed with common proof on a classwide basis. Further, Con Ed's obligation to provide such interest whenever it failed to accurately bill customers and instead overbilled them for utility services is also a common question capable of classwide resolution.

76. **Superiority (Rule 23(b)(3))**: Plaintiff and members of the Class have suffered and will continue to suffer damages as a result of Con Ed's wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Most members of the Class would likely find the cost of adjudicating their claim through the administrative process to be unduly prohibitive and will have no adequate remedy at law. Thus, absent a class action, members of the Class will have no reasonable way to remedy their harm, and may continue to incur damages, and Con Ed's misconduct will continue unabated.

77. Class treatment of common questions of fact and law is superior to multiple individual actions or piecemeal litigation because it will conserve the resources of this and other courts and the litigants, and will promote consistency and efficiency of adjudication. There is no impediment to the management of this action as a class action because the questions of fact and law are virtually identical for Plaintiff and all members of the Class.

## CAUSES OF ACTION

### COUNT I

### BREACH OF CONTRACT

78.     Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully set forth herein.

79.     Plaintiff asserts this claim for breach of contract on behalf of itself and the Class under New York law.

80.     Plaintiff and members of the Class were subject to the terms of Con Ed's Electric, Gas, and/or Steam Tariffs, which were in effect during the Class Period.

81.     Con Ed's tariffs are a binding and enforceable contract between Plaintiff and members of the Class, on the one hand, and Con Ed, on the other. *Krasner v. New York State Elec. & Gas Corp.,* 90 A.D.2d 921, 921–922, 457 N.Y.S.2d 927 (1982).

82.     This contract was supported by consideration, including the payment of monies in exchange for utility services, as required by binding and enforceable contracts.

83.     Plaintiff and members of the Class entered into this binding and enforceable contract prior to the alleged misconduct that gives rise to this proceeding—namely, Con Ed's failure to accurately charge and bill for utility services, which in turn resulted in Plaintiff and members of the Class paying more than the amount due under their contract.

84.     Plaintiff and members of the Class performed pursuant to their contract, including by paying monies in exchange for utility services.

85.     Plaintiff and members of the Class fully satisfied all conditions, covenants, obligations, and promises of their contractual agreement.

86.     Con Ed breached the terms of its contract with Plaintiff and members of the Class, by overbilling Plaintiff and members of the Class, not offering a refund or credit to rectify the

overpayment within thirty days, and thereafter wrongfully refusing to provide interest to Plaintiff and members of the Class on the overpayment amount.

87.     As a result of Con Ed's breach of contract, Plaintiff and members of the Class did not receive the full benefit of their respective bargain.

88.     As a result of Con Ed's breach of contract, Plaintiff and members of the Class are owed interest on their respective overpayment amounts.

89.     Plaintiff and members of the Class have been injured as a result of the breach of contract by Con Ed and are entitled to damages and/or restitution in an amount to be proven at trial.

## <u>COUNT II</u>

## **BREACH OF IMPLIED CONTRACT**

90.     Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully set forth herein.

91.     Plaintiff asserts this claim for breach of implied contract on behalf of itself and the Class under New York law and in the alternative to the claim for relief pleaded in Count I.

92.     Defendant is the largest public utility serving electric, gas, and steam customers in New York City and Westchester County.

93.     Defendant provides electric, gas, and steam services to the vast majority of residential and commercial customers in New York City and Westchester County, including Plaintiff and members of the Class.

94.     Plaintiff and members of the Class paid Defendant for electric, gas, and/or steam service during the Class Period.

95.     Defendant, in turn, provided utility services to Plaintiff and members of the Class

as if a binding contract existed.

96.     Plaintiff and members of the Class fully and adequately performed their obligations under the implied contracts with Defendant.

97.     Con Ed breached its implied contract with Plaintiff and members of the Class, by overbilling Plaintiff and members of the Class, not offering a refund or credit to rectify the overpayment within thirty days, and thereafter wrongfully refusing to provide interest to Plaintiff and members of the Class on the overpayment.

98.     As a result of Con Ed's breach of implied contract, Plaintiff and members of the Class did not receive the full benefit of their respective bargain.

99.     As a result of Con Ed's breach of implied contract, Con Ed was unjustly enriched, extracting payments in excess of any reasonable amount owed for the services provided, and improperly retaining interest on overpayments in contravention of the Public Service Law and regulations promulgated thereto.

100.    Plaintiff and members of the Class have been injured as a result of the breach of implied contract by Con Ed and are entitled to damages and/or restitution in an amount to be proven at trial.

## COUNT III

## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

101.    Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully set forth herein.

102.    Plaintiff asserts this claim for breach of the implied covenant of good faith and fair dealing on behalf of itself and the Class under New York law.

103.    Plaintiff and members of the Class entered into binding and enforceable contracts

with Con Ed, as alleged above.

104.    These contracts were subject to implied covenants of good faith and fair dealing that all parties would act in good faith and with reasonable efforts to perform their contractual obligations, both explicit and fairly implied, and not to impair the rights of the other parties to receive their rights, benefits, and reasonable expectations under the contracts. These rights, benefits, and reasonable expectations included that Con Ed would not overbill Plaintiff and members of the Class, and if Con Ed did overbill Plaintiff and members of the Class, it would credit or refund such monies within thirty days or pay interest on the overpayment amount. Plaintiff and members of the Class reasonably relied on Con Ed to act fairly, reasonably, and in good faith in carrying out its contractual obligations.

105.    A "special relationship" exists between Plaintiff and members of the Class, on the one hand, and Con Ed, on the other. Con Ed is authorized by New York State to provide utility services according to specific procedures, including procedures that permit Con Ed to estimate a customer's bill rather than only charging based on the services used. Plaintiff and members of the Class entrusted Con Ed not to overcharge them, and if such overcharges occurred, to refund or credit their money within thirty days pursuant to the Public Service Law.

106.    As set forth above, Con Ed was obligated to conduct itself in accordance with 16 NYCRR 145.2 , 16 NYCRR 145.4, and its own tariff in rendering an accurate bill and, in the event of an overcharge, in paying interest on the overcharge. Even if Con Ed is held not to have breached any express promise in its contract with Plaintiff and members of the Class, Con Ed breached the covenant of good faith and fair dealing by failing to adhere to the plain meaning of its own tariff and the applicable regulations.

107.    Plaintiff and members of the Class performed all conditions, covenants,

obligations, and promises owed to Con Ed, including the regular payment of monies for utility services.

108.    As a result of the breach of the covenant of good faith and fair dealing by Con Ed, Plaintiff and members of the Class did not receive the full benefit of their respective bargain, and instead were deprived interest on overpayments in contravention of applicable regulations and Con Ed's own tariff.

109.    Plaintiff and members of the Class have suffered monetary damages in an amount equal to the outstanding interest owed under their contracts with Con Ed.

110.    Plaintiff and members of the Class are entitled to damages and/or restitution in an amount to be proven at trial.

## COUNT IV

### VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349

111.    Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully set forth herein.

112.    Plaintiff asserts this claim for violation of New York General Business Law ("GBL") § 349 on behalf of itself and the Class under New York law.

113.    Con Ed's practices as alleged herein violate GBL § 349.

114.    GBL § 349 declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service" in New York State.

115.    Con Ed conducts business, trade or commerce in New York State.

116.    In the conduct of its business, trade or commerce, and in furnishing services in New York State, Con Ed's actions were directed at consumers.

117.    Con Ed's tariffs, as described herein, and the application of its tariffs, have a direct

and classwide impact on Con Ed's ratepayers, and thus its conduct is "consumer-oriented" under GBL § 349.

118.    In the conduct of its business, trade or commerce, and in furnishing services in New York State, Con Ed engaged in deceptive, unfair, and unlawful trade, acts or practices, in violation of GBL § 349, including but not limited to the following:

a.   Con Ed regularly provides customers, including Plaintiff and members of the Class, with bills that are false, which constitutes false or misleading conduct;

b.   Con Ed's initial billing is further false or misleading because it requires payment for services not rendered;

c.   Con Ed's later billings are false and misleading even if it provides a customer with a refund or credit because Con Ed fails to inform the customer, including Plaintiff and members of the Class, that its earlier inaccurate billing was the result of Con Ed's errors;

d.   Con Ed further engages in false and misleading conduct by refusing to notify overcharged customers, including Plaintiff and members of the Class, that they are eligible for interest payments on the overcharge, and Con Ed refuses to provide said interest, as required by statute and applicable regulation.

119.    Con Ed systematically engaged in these false and misleading acts and practices, to the detriment of Plaintiff and members of the Class.

120.    Plaintiff and members of the Class have been injured as they have been required to pay inaccurate billings and have not been provided interest on those overpayments, to which they are entitled under the law.

121.    As a result of Con Ed's repeated, unlawful and classwide deceptive acts and

practices in violation of GBL § 349, Plaintiff and members of the Class are entitled to monetary, compensatory, treble and punitive damages, injunctive relief, restitution and disgorgement of all monies obtained by means of Con Ed's deceptive conduct, as well as interest, attorneys' fees, and costs.

## COUNT V

## UNJUST ENRICHMENT

122.    Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully set forth herein.

123.    Plaintiff asserts this claim for unjust enrichment on behalf of itself and the Class under New York law.

124.    By engaging in the conduct described herein, Con Ed has unjustly enriched itself and received a benefit above what it is properly entitled to had it adhered to New York law and timely refunded or credited overpayments and paid interest on those overpayments that were not refunded or credited within thirty days.

125.    Con Ed has been unjustly enriched at the expense of Plaintiff and members of the Class.

126.    It would be unjust and inequitable for Con Ed to retain the overpayments made by Plaintiff and members of the Class and the interest improperly withheld by Con Ed on these overpayments.

127.    By reason of the foregoing, Con Ed is liable to Plaintiff and members of the Class for the damages they have incurred as a result of Con Ed's actions, the amount of which shall be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff International House respectfully requests this Honorable Court to enter judgment against Con Ed and in favor of Plaintiff, and to award the following relief:

a) Certification of the Class with Plaintiff appointed as class representative and undersigned counsel appointed as Class Counsel;

b) Find that Con Ed engaged in the unlawful conduct as alleged herein and enjoin Con Ed from engaging in such conduct;

c) Enter a monetary judgment in favor of Plaintiff and the Class to compensate them for injuries suffered, together with pre-judgment and post-judgment interest and other appropriate penalties;

d) A declaration that Con Ed must disgorge, for the benefit of the Class, all or part of its ill-gotten profits from overcharging members of the Class and denying them interest payments;

e) An award of all actual, general, special, incidental, statutory, treble or other multiple compensatory and consequential damages under statutory and common law as alleged in this Complaint, in an amount to be determined at trial;

f) Award Plaintiff reasonable attorneys' fees, costs, and expenses as permitted and authorized by law; and

g) Award such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a jury trial on all issues so triable.

Dated: October 13, 2022
New York, New York

Respectfully submitted,

*/s/ James J. Bilsborrow*
James J. Bilsborrow (JB8204)
**WEITZ & LUXENBERG, PC**

21

700 Broadway
New York, New York 10003
Tel: (212) 558-5500
jbilsborrow@weitzlux.com

*/s/ Michael Steifman*
Michael Steifman (MS-8216)
Steven P. Knowlton (SK-2429)
**STEIFMAN LLP**
292 Montauk Highway
South Hampton, New York 11968
Tel: (718) 645-4100
ms@steifmanlaw.com
sknowlton@steifmanlaw.com

*Attorneys for Plaintiff and the Putative Class*